THE STATE v. JEWELL, *Appellant.*

1. **Criminal Law** : DEFENDANT AS A WITNESS : EVIDENCE IN REBUTTAL. On a trial for murder, where the defendant testified in his own behalf, it is competent for the prosecution to read in rebuttal his application for a continuance at a previous term, for the purpose of showing contradictory statements made by him.

2. ———— : PRACTICE : CONTINUANCE. The action of the trial court, in overruling an application for continuance, will not be reviewed in the Supreme Court, where it is not assigned for error in the motion for new trial.

3. ———— : ———— : ————. Whether an attorney, appointed to defend one on trial upon a criminal charge, has had time to prepare for trial, is a question to be determined by the trial court, and its action in refusing a continuance, asked upon the ground of want of time, will not be disturbed where there is nothing to show that it abused its discretion.

4. **Practice in Supreme Court** : NEW TRIAL. The Supreme Court will not review the action of the trial court upon unsupported allegations in the motion for new trial.

*Appeal from St. Louis Criminal Court.*—HON. G. S. VAN WAGONER, Judge.

AFFIRMED.

*Albert Burgess* for appellant.

*B. G. Boone*, Attorney General, for the state.

A careful examination of the testimony discloses no error that will justify a reversal. The first instruction properly defines murder in the first degree. *State v. Snell*, 78 Mo. 240 ; *State v. Thomas*, 78 Mo. 327 ; *State v. Wisdom*, 84 Mo. 177. The second correctly defines the words constituting the elements of the crime charged. *State v. Weiners*, 66 Mo. 13 ; *State v. Banks*, 73 Mo. 592 ;

*State v. Kotovsky*, 74 Mo. 247; *State v. Snell, supra.* The third tells the jury that if the crime committed had all the elements defined in the foregoing instruction, they will find defendant guilty as charged, and if not, they will not find him guilty of murder in the first degree. The fourth tells the jury that if they believe from the evidence that the killing was accidental, they will acquit defendant. The fifth is the usual instruction as to the credibility of witnesses. *State v. Thomas, supra; State v. Vansant*, 80 Mo. 71. The sixth is as to the credibility of defendant's testimony. *State v. McGuire*, 69 Mo. 197; *State v. Zorn*, 71 Mo. 415; *State v. McGinnis*, 76 Mo. 328; *State v. Cook*, 84 Mo. 40; *State v. Wisdom*, 84 Mo. 177. The seventh is as to the presumption of innocence in defendant's favor, and defining a reasonable doubt. These instructions were all that the court was authorized in giving under the evidence. Defendant's averment, in his motion for a new trial, that he has discovered new and material evidence since the trial of the cause, which would warrant a new hearing, is supported by nothing, and as the trial court overruled the motion, it is presumed that such new material and important evidence was not shown to exist, and this court will not reverse. Another ground in said motion is, that the court compelled the defendant to be represented by objectionable counsel, and his (defendant's) rights were thereby prejudiced. Appellate courts will not review the actions of the officers of trial courts upon unsupported allegations in motions for new trials. Such charges should be well established to entitle them to consideration. Hilliard on New Trials, p. 225, sec. 40; *Lloyd v. Railroad*, 53 Mo. 509; *State v. Morgan*, 1 Mo. App. 22; *State ex rel v. Claudius*, 1 Mo. App. 551; *Cobb v. State*, 27 Ga. 648.

RAY, J.—Defendant was indicted in the criminal court of St. Louis, at the May term, 1885, for murder in

the first degree, for killing his wife, Eliza Jewell, and upon a trial at the October term, was convicted of that offence. The defendant shot his said wife, on December 30, 1884, the bullet entering the face, under the right eye, and penetrating to the back and lower part of the head. The wound was not immediately fatal, but produced, as the medical testimony shows, a "dilatation, or aneurism of the coats, or walls of the internal carotid artery," which continued to grow and push out into the throat, and to threaten to rupture, and give way at any moment. About the middle of April, and when death was deemed inevitable, a surgical operation was undertaken, as a possible chance of saving her life ; but this was unsuccessful, and death ensued about the last of the month, resulting, as the evidence shows, from the gun shot wound aforesaid. The defendant, who was about twenty-two years of age, had been married to his wife, who was only seventeen years old, about one year prior to the time the shooting occurred. The evidence shows that they did not get on well together ; that defendant, on several occasions, threatened to kill his wife, and that on one of these, he struck at her with a knife, cutting her clothing, but doing her no injury at the time. At the time of this trouble, defendant had a room rented in the house of his wife's father and mother, but his wife was not living with him at the time, having left him and gone out to work, a week or more prior to this difficulty. The night before the shooting was done, the wife returned to her mother's, and the difficulty took place in the room used as the dining room, about noon of the day following, on the said thirtieth day of December, 1884. There were present in the room at the time, defendant and his wife, Eliza, Mrs. Drummond, who was the wife's mother, and a younger sister of the wife's, named Annie, and of these, the only witnesses of the immediate transaction, Mrs. Drummond and the daughter, Annie, were

sworn in behalf of the state, and the defendant in his . own behalf.

The testimony of the wife's said sister and mother, as to the immediate facts and circumstances of the shooting, is, in substance, the same, and about as follows: That when defendant met his wife there in the morning, he insisted she should live with him again, which she refused to do ; that he went away and returned several times, perhaps, in the course of the forenoon, and that, in one of these parleys he told her that if she would not live with him, she should not live ; that he came in, the last time, about noon, with his hands in his overcoat pocket, and was standing in front of the mantel piece, when his wife, Eliza, walked up to him and asked him, " Dan, what are you going to do with that pistol ; " that he replied, " I haven't any pistol ; " that she then slapped her hand on his overcoat pocket, and said, "Aha, I knew you had that pistol," and turned away from him to the machine ; that defendant then said, walking up to her, " I aint going to do anything to you, I tell you my word is my bond ; " that she leaned her back against the sewing machine, and turned to him and said : " You ·can't fool me," and as she said this, or immediately thereafter, he pulled the pistol and shot her. After the shooting, defendant, with the pistol in his hand, ran out, back through the alley, at the end of which he was met by the witness, Robinson, who had heard the report of the pistol, and who seized the defendant and held him until the officer came up and took the pistol out of his hand and arrested him.

The defendant was the only witness in his own behalf, and his statement and claim is, that the shooting was entirely unintentional and accidental ; that there had been no quarrel between them previously, of any consequence, and that they had lived together on very good terms. He testifies that the morning the shooting occurred he had been down town, and came back for

some clothes which he intended to take to the laundry, and that shortly after he came into the room, his wife put her arm about his waist and said, "you got your pistol;" that he said, "yes, I have got it and it is loaded;" that she then said, "give it to me," and that he told her no; that she said, "let me see it then;" that he pulled it out, at the time, with his left hand; that she snatched hold of it, and stumbled, and they both stumbled together, and at that time the pistol went off, and that he did not know or remember how it happened.

The attorney for the state read in rebuttal, and solely for the purpose of showing contradictory statements by defendant, the application for a continuance made and sworn to in said cause by him at a previous term of the court, in which he stated that one Perkins was present at the time of the shooting, and that he expected to prove by him that at the time the shooting took place, the pistol was in the hands of the deceased, and that she was endeavoring to shoot him, and that while he was trying to protect himself, by pushing the pistol from his person, it went off and inflicted the wound which caused the death. This evidence, which is the substance of that in the record, needs little comment, if any, from us. We can say no more, and perhaps should say no less, than that it shows no provocation or excuse, whatever, for this atrocious deed. The defendant's explanation of the shooting was disbelieved by the jury. We may remark that there is no brief, or argument, or assignment of errors filed in the cause in defendant's behalf, in this court, and that we are, therefore, not advised as to the particular grounds, if any, upon which a reversal of the judgment below is claimed.

An exception was taken to the overruling of the application for a continuance, upon the admission by the state, that the desired witness would, if present, testify as therein stated. The court's action, in this behalf, is not now before us, as the same was not urged in the

motion for new trial, and was thereby waived. *State v. Mann*, 83 Mo. 589 ; *State ex rel. v. Burckhartt*, 83 Mo. 430. But if properly here, this ruling of the court would not be error, as has recently been held by this court. *State v. Henson*, 81 Mo. 386 ; *State v. Hickman*, 75 Mo. 419. The application for a continuance was also based upon an affidavit of Mr. Burgess, to the effect that there had not been sufficient time since he was notified on October 1, of his appointment by the court to defend, to enable him to prepare the case for trial on the day set, which was October 12, but there was no statement of special facts or reasons in the affidavit showing why a longer period was asked or required. This is a matter within the sound discretion and control of the trial court, and there is nothing in this behalf before us to show that its power and discretion was in these respects arbitrarily or unsoundly exercised.

The instructions which the court gave of its own motion, we think, cover the case made by the evidence. The first instruction defines murder in the first degree, and says that to constitute that crime it is necessary that the killing should have been done feloniously, wilfully and deliberately, premeditatively and with malice aforethought, and that if either of these elements is lacking, the crime is not murder in the first degree. It also further defines these terms thus used in the indictment and instructions. The second is merely as to the form of the verdict, if they found defendant guilty. The third is that if the jury find from the evidence that the killing was accidental, they should acquit. The fourth is the usual one as to the credibility of witnesses. The fifth is that the defendant is a competent witness in his own behalf, and that the jury may consider the fact that he is testifying in his own favor in determining his credibility. The sixth, and remaining instruction, is upon the presumption of innocence, and defining a reasonable doubt, and is in the usual and approved form.

Further grounds for the motion for new trial, such as the discovery of new and material evidence since the trial, and that defendant was compelled to be represented by counsel he objected to, are not supported by affidavit, or otherwise, as appears by the record, and we cannot review the actions of trial courts upon unsupported allegations in motions for new trials.

The case seems to have been well tried under proper instructions, and finding no error in the record, the judgment of the criminal court is, therefore, affirmed. All concur, except Sherwood, J., absent.