THE STATE v. HEDGEPETH, *Appellant*.

Division Two, November 20, 1894.

1. **Criminal Practice:** ABSENCE OF COUNSEL: CONTINUANCE. Where there have been three continuances, the refusal of a further continuance on the ground that defendant's counsel was engaged elsewhere will not be disturbed, the court having offered to assign counsel.

2. ———: EVIDENCE: ATTORNEY. A statement by one under indictment to an attorney not retained by him, and whom he requested to convey a message to the chief of police, is admissible in evidence.

3. —— : —— : ——. An attorney is a competent witness against his client as to all matters not privileged.

4. —— : —— : CONFESSIONS. Statements voluntarily made by the accused to a person not an officer not having any control over him without any inducements being held out are admissible in evidence.

*Appeal from St. Charles Circuit Court.*—HON. JAMES F. GREEN, Special Judge.
AFFIRMED.

*McDonald & Howe* and *Charles T. Noland,* for appellant.

(1) The court should not have forced the prisoner into trial on the twenty-eighth of September, 1893, while his attorney, employed and paid to defend him, was engaged in another court in the trial of a case, but should have continued the cause to the next term, or postponed the trial to a day certain. The court's action was an abuse of the discretion lodged in it by law. *Daughtery v. State*, 26 S. W. Rep. (Tex.) 60; *Bates v. Com.*, 16 S. W. Rep. (Ky.) 528; *State v. Dusenberry*, 112 Mo. 277; *State v. Bailey*, 94 Mo. 311; *State v. Jewell*, 90 Mo. 472. (2) If Furling testified to statements made to him by the prisoner while he was acting as the attorney of the prisoner in endeavoring to secure a lighter sentence by reason of a plea of guilty, such evidence was incompetent and he was an incompetent witness. If Furling was not the attorney of Hedgepeth then the conversations between them were inadmissible unless they are confessions, and as no foundation for the admission of such testimony was laid, it was error to admit such conversations or confessions in evidence. *State v. Kinder*, 96 Mo. 548; *State v. Rush*, 95 Mo. 199; *State v. Patterson*, 73 Mo. 696; *State v. Phelps*, 74 Mo. 128; *State v. Duncan*, 64 Mo. 262; *State v. Hopkirk*, 84 Mo. 278; 1 Greenleaf on Ev., secs. 219–230; 1 Phillipps on Ev.,

sec. 543; 1 Wharton's Crim. Law, sec. 698; *Conley v. State*, 12 Mo. 464. (3) If the testimony of Furling was admissible, then the court should have instructed the jury relative to extrajudicial confessions. *State v. Brooks*, 92 Mo. 592, and authorities cited in Judge SHERWOOD's dissenting opinion.

*R. F. Walker*, Attorney General and *Morton Jourdan*, Assistant Attorney General, for the state.

(1) The allegation that the court committed error in the exclusion of material and competent testimony offered on the part of the defendant is contradicted by the record, which not only shows that the defendant himself refused to testify, but that he did not offer a single witness or a particle of testimony in his behalf; and, inasmuch as allegations in the motion for new trial do not prove themselves, this complaint will not be considered. *State v. Welsor*, 117 Mo. 570; *State v. Foster*, 115 Mo. 451. (2) The same is true of the complaint that the court refused proper and legal instructions offered on behalf of the defendant; none were asked and none were refused; hence, this alleged error will not be considered. *State v. Welsor, supra; State v. Foster, supra.* (3) The court committed no error in requiring defendant to go to trial without counsel. The granting of continuances is addressed largely to the discretion of the trial courts, and unless it clearly appears that such discretion has been abused, the supreme court will not interfere. *State v. Murphy*, 118 Mo. 7; *State v. Banks*, 118 Mo. 117.

BURGESS, J.—Defendant was jointly indicted with several other persons in the circuit court of St. Louis county, charged with robbing the Adams Express Company of a large amount of money, about $20,000, by force and violence and by putting the agent of said

company in charge of said property, in fear of immediate injury to his person.

Afterward at the May term, 1892, of said court, on his application, he was granted a change of venue to the circuit court of St. Charles county. At the September term following, of the St. Charles circuit court, the cause was set for trial September 20, 1892. On that day defendant appeared in the St. Charles circuit court, and, Martin and Bass no longer appearing as his attorneys, the cause was continued until December 12, so that defendant might secure counsel. On December 12, 1892, Marshall F. McDonald appeared in the St. Charles circuit court as the attorney of defendant and as he was too ill to properly discharge his duties to his client and the court, the cause was continued to the next regular term and set for trial on the first day thereof.

On the first day of the said term, it being the March term, 1893, defendant filed a motion for a continuance and for an order on the Adams Express Company to produce money and property, taken from defendant at the time of his arrest, and place the same in the hands of the sheriff of St. Charles county to be used as evidence in the cause. The court granted a continuance of the cause to next term, September, 1893, but denied the prayer for an order on the express company to place the said money and property in the hands of the sheriff.

On September 11, 1893, defendant filed a motion for a continuance, which was by the court overruled, and he immediately filed a motion for a change of venue based upon prejudice arising in the community after the transfer of the case, and for a special judge to try the cause. On the following day, September 12, 1893, the court sustained the application for a special

judge and set the cause for trial September 18, 1893, and requested the Hon. J. F. Green, judge of the twenty-first judicial circuit to try the cause. On September 18, the day named by the court for the trial of the cause, the Hon. J. F. Green failed to appear, and the sheriff of St. Charles county adjourned court until the next day, September 19, 1893. On September 19, the Hon. J. F. Green appeared and presided as special judge, and overruled defendant's application for a change of venue and set the cause for trial September 27, next following.

On September 27, defendant's attorney, Marshall F. McDonald, did not appear, being engaged elsewhere in the trial of a case. On September 28, the cause was called for trial and McDonald was still absent. The court then offered to appoint an attorney for defendant but he refused to accept the services of an attorney appointed by the court.

The court then proceeded with the trial, and during its progress the state introduced as a witness one Joseph Furling, and as to him defendant objected to his giving any testimony. The witness testified that he was an attorney practicing his profession in the city of St. Louis, but that he had never been the attorney of defendant. The objection was then overruled, and the witness testified as follows:

That he had practiced law in the city of St. Louis fourteen years. That he frequently visited the jail to see his clients and that on one occasion defendant called to him and said: "I understand you and Harrigan are pretty thick." That when he replied, yes, that he and Chief of Police Harrigan were good friends, defendant then asked witness to go and see Harrigan and see if he would not let him off with fifteen years imprisonment in the penitentiary if he pleaded guilty. That witness saw Chief Harrigan and reported to

defendant that Harrigan refused to accept the offer. Witness stated that defendant frequently spoke to him about securing a light sentence in case of a plea of guilty but informed witness that he had no money to employ an attorney to fight his case and hence it was best for him.

The said Furling testified also that at the time of these alleged interviews between defendant and himself, defendant was confined in the St. Louis jail upon an indictment for the crime of which they were talking.

After the state closed its evidence defendant declined to introduce any testimony and the jury returned a verdict of guilty and assessed his punishment at twenty-five years in the penitentiary.

Defendant then filed his motion for a commutation of the sentence, which was then fixed at twenty-five years in the penitentiary, the term to commence from the date of his arrest on the tenth day of February, 1892. From the judgment and sentence, defendant appeals.

The first contention upon the part of the defendant is that he should not have been required to go to trial while the attorney employed to defend him was absent engaged in another court in the trial of a cause, but that the court should have continued this cause to the next term, or postponed the trial to a day certain. Questions of this character rest largely in the discretion of the court, and, unless such discretion was manifestly abused, the judgment should not be reversed upon that ground.

In *Daughtery v. State*, 26 S. W. Rep. (Tex.) 60; *Bates v. Commonwealth*, 16 S. W. Rep. 528; *State v. Dusenberry*, 112 Mo. 277; *State v. Bailey*, 94 Mo. 311; *State v. Jewell*, 90 Mo. 472, relied upon by counsel for defendant as sustaining their contention, the attorney of defendant in each case was unable to attend the

trial and conduct the defense because of his illness, and not because of his engagement in the trial of another cause in another court, as in the case at bar. Here the court granted on defendant's application one continuance because of the illness of his attorney McDonald.

The judges who at different periods had control of this case up to and during its trial exhibited great forbearance and indulgence to defendant and his counsel, whose conduct was little less than trifling with the court. When the facts as disclosed by the record as hereinbefore stated are taken into consideration—the various motions for continuances, changes of venue, and efforts to continue the cause from time to time and term to term, it is difficult to see of what act of the court the defendant has cause to complain. If the defendant was entitled to a continuance because his attorney was engaged in the trial of a cause in another court, especially after his declination to accept the services of another attorney which the court offered to appoint to defend him upon his trial, then there was no certainty that it would ever come to trial, for the same state of facts might exist at any subsequent term. Even in case of sickness of the attorney of a defendant, so that by reason thereof he should be unable to attend, there would be no abuse of discretion in refusing a continuance upon that ground, unless there should exist a reasonable probability that he would be able to attend the trial by some reasonably definite time to be fixed by the court.

While it is true, as contended for by counsel for defendant, that, if the statements made to the witness Furling were made while he was acting as his attorney in endeavoring to receive a lighter sentence by pleading guilty, such evidence was incompetent, the evidence shows that he never at any time occupied that relation

toward him. Upon the contrary the witness testified that he was never employed by defendant, never expected any remuneration for what he did, which was merely gratuitous, and his statement is not contradicted in any manner by any other witness. The mere fact that he was a practicing attorney, and that he complied with the request made of him by defendant by no means created the relation of attorney and client. It required no professional skill, and any other person of ordinary intelligence could have performed the same service. No fee was paid nor was there any contract either express or implied by which one was to be paid. "It is said that two things are necessary to establish the relation between attorney and client: *First*, the agreement of the attorney to be an attorney for the party; and *second*, the agreement of the party to have the other for an attorney." Weeks on Attorneys at Law, sec. 185.

Moreover, the objection was made to the competency of the witness, and not that the communication or request made of him by defendant was privileged because the witness was his attorney at the time the request was made. There can be no question as to Furling's competency as a witness, even if he was the attorney of defendant; but he could not testify to communications that were privileged without the consent of his client. As to all other matters he occupied the same plane as did any other witness.

But it is argued that if Furling was not the attorney for defendant, then the conversations between them were inadmissible unless they were confessions, and as no foundation for the admission of such testimony was laid, it was error to admit them. It is difficult to see how the statements made by the defendant to the witness Furling could be tortured into a confession. If it could be, then any statement made by a defendant

charged with crime to any person whomsoever as to his connection therewith, or with respect thereto must be regarded as a confession, and it matters not when, or what circumstances under which, made.

But, even if the statements should be treated as confessions, they were voluntarily made to a person not an officer, or having any control over him, without any inducements being held out and were not inadmissible upon that ground. In *State v. Patterson*, 73 Mo. 695, SHERWOOD, C. J., after an exhaustive and able review of all the authorities, says: "The law is settled now that a confession, to be inadmissible, must be made to an officer of the law, in consequence of improper influences exerted by him, and if no threat of harm or promise of worldly advantage be made by such official, or by the master of the accused when directly concerned, the confession is admissible." That case has since been followed and approved in *State v. Phelps*, 74 Mo. 128; *State v. Owen*, 78 Mo. 367; *State v. Hopkirk*, 84 Mo. 278; *State v. Brooks*, 92 Mo. 577; *State v. Meyers*, 99 Mo. 119.

The case seems to have been well tried, and free from any cause which would justify a reversal of the judgment. Judgment affirmed. All of this division concur.

