THE STATE v. UNDERWOOD, *Appellant.*

1.  **Practice.** A rule of court which makes a change of venue case non-triable unless the transcript is filed at least fifteen days before the term, is in conflict with section 1870, Revised Statutes 1879, and void.

2.  **Criminal Law** : ABSENT WITNESSES: CONTINUANCE. The statute which enables the prosecution to force the accused to trial notwithstanding the absence of a witness, by admitting that if present the witness would testify as stated in the application of the accused for a continuance, is not a violation of the constitutional guaranty that the accused shall have compulsory process for his witnesses, but it goes to the very verge of the constitution and must not be so construed as to permit a distinction to be taken between such testimony and the testimony of witnesses present. The intention is, that the statutory testimony shall be entitled to the same weight as if the witness was present at the trial

3.  —— : EVIDENCE OF OTHER OFFENSES. While it is true as a general rule that on the trial of one accused of a crime evidence of other crimes committed by him is inadmissible, yet where the testimony relates to a conversation of the accused wherein he admits the commission of the offense charged and also another crime, it is proper to give in evidence the whole conversation.

The State v. Underwood.

4. ———— : EVIDENCE. Upon a trial for murder, defendant claiming to have acted in self-defense, offered evidence that shortly before the homicide other persons accused of crime had been taken from the hands of officers of the law and hung by a mob, but the evidence did not implicate the deceased, and it was excluded. *Held*, no error.

5. **Deputy Constables**: APPOINTMENT. A deputy constable who holds an appointment in writing, and has been sworn, may execute process, though his appointment has not been filed in the office of the clerk of the county court as required by statute.

6. **City Marshals**: POWER TO ARREST. A city marshal has no authority to make arrests for an offense not committed in his presence without a warrant. R. S. 1879, § 4998.

7. **Deputy Constable**: POWER TO ARREST. A deputy constable may arrest without warrant if he has reasonable cause to suspect that a felony has been committed.

8. **Arrest**: HOMICIDE. The mere announcement of an intention to arrest, without the actual use of force, by a person not authorized to make arrests, will not justify the person threatened in killing him.

*Appeal from Barton Circuit Court.*—HON. C. G. BURTON, Judge.

REVERSED.

This was an indictment for the killing of J. D. McElwrath. The evidence showed the following state of facts: Deceased was city marshal of Greenfield, Dade county, and deputy constable of Center township in which Greenfield is situated. On the 20th day of June, 1881, deceased, with others, went into the country to arrest horse thieves. They succeeded in taking Mitchell and Butler, two men charged with stealing horses. While out they obtained information that defendant Underwood was also implicated, and McElwrath returned to Greenfield to arrest him. Meeting him in a saloon, McElwrath informed defendant of his intention. The evidence was conflicting as to what occurred at this point, that of the State tending to show that the declaration of deceased was not accompanied by any threat or hostile demonstration, and that defendant instantly drew

his pistol and fired, inflicting the wound of which McEl-wrath died in a few minutes; while that for the defense tended to show that deceased was the first to draw his pistol, at the same time calling out to one Long, who was acting with him, to shoot defendant. On the part of the State, a witness was permitted to testify that defendant had said that certain marks on the butt of his pistol indicated the number of men he had killed, and that one of them was for McElwrath, and the other for an Indian. On the part of defendant evidence was offered to show that as the posse having Mitchell and Butler in charge, were returning to town they were several times set upon by a mob who attempted to carry off the prisoners by force with the purpose of hanging them, but the court excluded the evidence.

The instructions referred to in the opinion, are as follows: 9. "The court instructs the jury that they are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony, and in determining such credibility and weight they should take into consideration the character of the witness, his interest, if any, in the result of the case, the probability or improbability of his statements, his opportunity for obtaining knowledge concerning the matters to which he has testified, as well as all the facts and circumstances in the case; and if the jury shall believe that any witness has knowingly sworn falsely to any material matter, they are at liberty to disregard the whole or any part of such witness' testimony.'

21. "The statement read in evidence upon defendant's application for continuance, of the facts which he expected to be able to prove by the absent witnesses, are to be taken and received by the jury as the testimony of such witnesses, and are entitled to the same weight as if such absent witnesses had been sworn and given their evidence on the trial." Other facts appear in the opinion of the court.

*W. C. Robinson* and *E. Butler* for appellant.

*D. H. McIntyre,* Attorney General, and *B. G. Thurman* for the State.

SHERWOOD, C. J.—The defendant, indicted in the county of Dade for murder in the first degree, was, on change of venue to the circuit court of the county of Barton, convicted of that offense, and now appeals to this court.

I.

There was no error in denying the defendant's motion to strike the cause from the trial docket, based upon the reason that the cause coming by change of venue from another county and the transcript being filed less than fifteen days before the first day of the term, the cause was not triable at such term. The motion had the support of rule 12 of Barton circuit court, but that rule is in direct conflict with section 1870, Revised Statutes 1879, which provides that, "upon a transcript from another court being filed in the court to which the venue has been changed, the same proceedings shall be had in the cause in such court, in the same manner, and in all respects, as if the same had originated therein;" and the statute must prevail.

II.

Nor was error committed in denying defendant's application for a continuance, the prosecuting attorney, under the provisions of the statute, section 1886, having consented that the absent witnesses would, if present, testify as stated in the defendant's application. *State v. Hatfield,* 72 Mo. 518; *State v. Miller,* 67 Mo. 607. That section provides that upon such consent being given, " the facts set out in the application or affidavit, as the facts which the party asking the continuance expects to prove by the absent witness, shall be taken as and for the testimony of

such witness, the trial shall not be postponed for that cause; but the facts thus set out shall be read on the trial, and be taken and received by the court or jury trying the cause as the testimony of the absent witness; but such facts may be contradicted by other evidence, and the general reputation of such witness may be impeached, as in the case of other witnesses who testify orally or by deposition."

This statutory provision, so far as concerns criminal cases, was designed as substitutionary for that constitutional provision which allows the accused " to have process to compel the attendance of witnesses in his behalf." Art. 2, § 22. When section 1886 was first called to our attention, we had grave doubts touching its constitutionality. Taken at its best, the section is but a sorry substitute for compulsory process, and it may well admit of serious doubt whether, as a matter of strict constitutional law, a party accused of a crime can be compelled to forego the benefits arising from having the personal presence and oral testimony of his witnesses, provided the prosecuting attorney will consent that the absent witness would if present, testify in the manner stated.

But waiving the further consideration of the constitutional point, the statute expressly says that the facts thus set out shall be read on the trial, and shall be received by the court or jury trying the cause as the testimony of the absent witnesses. There can be no other rational construction placed on this language but that it was intended to place the statement of facts set forth in the application for · a continuance on precisely the same footing, to all intents and purposes, as though the absent witnesses had been personally present and testified. And it was because we took this view of the matter on former occasions that we upheld the validity of the statute.

We are thus brought to a consideration of the fifteenth instruction given at the instance of the State, as follows : " The statements read in evidence as the testimony of C.

The State v. Underwood.

R. Turner and Jno. Doe, whose real name is unknown, are to be taken and received by the jury as the testimony of such persons were they present; and the jury are the sole judges of their credibility, and of the weight to be given to their testimony." The court, at the request of the prosecuting attorney, had previously given instruction number nine, which is the usual one given in regard to the credibility of witnesses, and so instruction fifteen above quoted was entirely unnecessary, unless it can be safely said that it is proper to draw a distinction between the testimony of witnesses who are present and testify, and statutory testimony of the absent witnesses as set forth in an application for a continuance. We are of opinion that neither the letter nor the reason and spirit of the statute under discussion, will admit of any such distinction and still less admit of such distinction being pointedly called to the attention of the jury, as we think was done in the instruction referred to. On retiring to consider of their verdict, the jury could not fail to be impressed with the line of demarkation thus drawn between the testimony of the witnesses present and that of those absent, or what is tantamount thereto, its lawful equivalent and legal substitute. Such distinctions, violative alike of the statute and of the reasons upon which it is founded, cannot receive our sanction. We went to the extreme verge of the constitution in upholding the constitutionality of the statute, and having gone so far, we are unwilling to go still further, and by a loose construction fritter away the doubtful and substitutionary benefits that statute confers and whatever of slender protection to the rights of the accused it affords. For these reasons, we think there was error in giving instruction number fifteen on the part of the State, and in refusing instruction number twenty-one asked for defendant; as the latter, in our opinion, correctly embodies that which the legislature intended to be the effect of the statute we have discussed.

### III.

In regard to the admission of evidence concerning the marks on the pistol, etc., there was no error in admitting it. True, as a general rule, that on the trial of one accused of crime, evidence of other crimes committed by him is inadmissible. *State v. Martin*, 74 Mo. 547, and cases cited. But where the testimony relates to a conversation of the accused, wherein he admits the commission of a homicide, with which he is charged, and also in the same conversation makes admissions of another crime, it is proper and competent to give in evidence the whole conversation. *State v. Carlisle*, 57 Mo. 102; Barb. Crim. Law, 463; *Rex v. Clewes*, 4 Carr. & Payne 221; 1 Greenleaf on Ev., § 218. And besides, in the case at bar, it was impossible to separate that portion of the conversation of the prisoner relating to the particular offense, from that portion of the conversation relating to another offense.

### IV.

The testimony of Murphy was properly excluded. If introduced, as offered, it would only have shown an attempt to take away from the custody of the officers of the law, Mitchell and Butler, arrested for stealing horses, but would not have shown anything at all implicating McElwrath in such attempt. *State v. Estis*, 70 Mo. 438. And it was upon this express ground that the court made the ruling of which complaint is made. There was no error in it.

### V.

The appointment of McElwrath as deputy constable was valid, notwithstanding the appointment had not been filed as required by law. His appointment was in writing; he had taken the oath of office, and for five or six months had been serving process, both civil and criminal, in the township where appointed. The only object the law has in requiring the appointment to be filed in the office of the clerk of the county court, (§ 652, R. S. 1879,) is to preserve

record evidence of the fact of such appointment having been made.

But the fact that McElwrath was the marshal of the city of Greenfield gave him no authority to make the arrest without warrant. This point is controlled by the statute. § 4998.

His authority, however, as deputy constable was sufficient to authorize the arrest without warrant if he had reasonable cause to suspect that a felony had been committed by the defendant. Blackstone says, when speaking of a constable: "He may, without warrant, *        * in case of felony actually committed, *        * upon probable suspicion, arrest the felon." 4 Com. 292. Shaw, C. J., in *Comm. v. Carey*, 12 Cush. 246, thus states the rule applicable to such cases: "If a constable or other peace officer arrest a person without warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful; but if he suspects one on his own knowledge of facts, or on facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of felony, the arrest is not unlawful." In that case accused, after being arrested, in the endeavor to make his escape, killed the officer, and the offense was ruled to be manslaughter only; but it was also ruled that if the offense charged in the letter written to the officer to make the arrest had set forth facts constituting a felony, the offense would have been murder. Mr. Bishop, when speaking of arrest without warrant, says: "Where it is felony and is past, *        * the officer is justified though no offense has been committed; *        * yet must have had reasonable cause to suspect the one apprehended." 1 Bishop Crim. Proc., § 181. Upon examination of all the facts disclosed by this record, we cannot say but that McElwrath had reasonable ground authorizing him to act as he did.

## VI.

But even granting that McElwrath had no authority to make the arrest, if the testimony offered on the part of the State is to be credited, the defendant was not justifiable in shooting him, as according to that testimony McElwrath had used no force and attempted no physical restraint of the defendant had simply announced his intention to make the arrest, when the fatal shot was fired. So that, even if the official character of McElwrath was unknown to defendant, yet if the testimony offered on the part of the State as to what occurred in the saloon, is to be regarded as true, the killing of McElwrath was wholly inexcusable. Mr. Wharton lays down the rule that if the defendant slay an officer of whose official character he has no notice, this is homicide in self-defense, if the killing was apparently necessary to save the defendant's life. 1 Crim. Law, § 419. Now, if the facts were as stated by the State's witnesses, there was no apparent necessity for the homicidal act and consequently no excuse therefor.

## VII.

But the testimony on the part of the defendant placed the matter in quite a different light, showing that McElwrath did more than merely announce his intention of making the arrest. According to that testimony, which, so far as instructions are concerned, is to be taken as true, McElwrath spoke to defendant in a threatening manner, and attempted to draw his pistol, crying out to Long who stood in the door with a pistol in his hand, "Shoot him, Bob!" and it was no doubt upon this theory that the court gave instruction number eleven on behalf of defendant. That instruction is undoubtedly correct in that view of the case.

## VIII.

And we are inclined to the opinion that an instruction should have been given also on behalf of the defendant

in relation to his knowledge of the official character of McElwrath when attempting the arrest, (1 Wharton Crim. Law, § 419,) as that element appears to have been omitted from the instructions which were given. This cause was, in the main, well tried, and in view of the fact that it must be retried, we make no further comment, but for the error committed in giving instruction number fifteen, aforesaid, and in refusing instruction number twenty-one, asked by defendant, we reverse the judgment and remand the cause. All concur.