THE STATE v. OWEN, *Appellant.*

1. Autrefois acquit: LARCENY. A person tried upon an indictment drawn in two counts, the first charging larceny, the second embezzlement of the same property, was found guilty on the first count and not guilty as to the second, and judgment of discharge entered accordingly. For a fatal defect in the first count the judgment was arrested, and upon another indictment being found for larceny alone, the defendant interposed a plea of *autrefois acquit.* *Held,* not a good plea.

2. The Court declines to construe an obscure order of *nolle prosequi* found in the record as referring to the indictment on which the defendant was tried, it appearing that he had been before tried on an indictment which had, upon motion in arrest, been held bad.

3.  **Larceny.** An indictment *held* sufficient.

4.  **Limitation to Criminal Prosecution.** When an indictment is quashed the time during which it was pending, is not to be computed as a part of the time of the limitation prescribed for the offense. R. S. 1879, § 1707.

5.  **Instructions,** in a larceny case, approved.

6.  **Practice, Criminal:** DEFENDANT AS A WITNESS. A defendant voluntarily testifying in his own behalf, is amenable to the usual rules governing the cross-examination of witnesses. R. S. 1879, § 1918. See *State v. Turner*, 76 Mo. 350; *State v. Porter*, 75 Mo. 171.

7.  ———: HARMLESS ERROR IN RULING ON EVIDENCE. Where the defendant on the witness stand virtually admits his guilt, and besides it is clearly established by his confessions made out of court, and by other evidence, error in admitting further evidence will not warrant reversal of the judgment. HOUGH, C. J., and HENRY, J., dissent.

8.  ———. Remarks of the prosecuting attorney in this case, if improper, do not require reversal of the judgment.

*Appeal from Livingston Circuit Court.*—Trial before JONAS J. CLARK, ESQ., sitting as Special Judge.

AFFIRMED.

On the 4th day of February, 1880, the grand jury of Livingston county returned an indictment against defendant, charging him with the larceny of a mare, the property of one Edward A. Evans, on the 20th day of April, 1879. On the 28th day of September, 1881, defendant was tried and found guilty on this indictment, but on the 8th of the following October he was awarded a new trial. In January, 1882, there was a mistrial. Afterward, on the 28th of the same month, the grand jury returned a new indictment in two counts, the first charging larceny of the mare, the second embezzlement of her. On the 23rd day of May, 1882, defendant was tried and found guilty on the first count, and not guilty on the second count of this indictment. On the 25th of the same month a motion in arrest was sustained, and on the 1st day of June a new indictment was found. On the 3rd day of June an order was entered as follows: "A new indictment having been filed herein at this term,

on verbal motion of the prosecuting attorney, it is ordered that a *nolle prosequi* be entered herein, and that defendant go hence discharged thereof and recover his costs in this behalf expended." The new indictment is as follows:

That on the 20th day of April, 1879, John E. Owen unlawfully and feloniously did then and there, one mare of the value of $50, then and there being the property of Edward A. Evans, did take and carry away, against the peace and dignity of the State; and the said John E. Owen has been a fugitive from justice from the 20th day of April, 1879, to the 20th day of January, 1881, and was not an inhabitant of or usually resident within this State from the 20th day of April, 1879, to the 1st day of April, 1881, against the peace and dignity of the State. On this indictment defendant was tried.

Edward A. Evans, for the State, testified: Defendant came to my place about dark in April, 1879, looking for work. I was setting out trees; he helped me that evening. He remained at my house two days, then I hired him. I proposed to send him out to plow. He said he had clothes in Chillicothe, and would go and get them before going to work; said his reason for getting them was he wanted a change of clothing. I said: How do you expect to get to Chillicothe. He said I don't know; can't you let me have a horse. I said I don't know; I don't like to loan my horses. He said he would be back by three o'clock p. m. Then I let him have the horse in controversy. I never saw her afterward. About three months afterward I heard he was in the Richmond jail. I visited him there in his cell. Tears were running down his cheeks. He said he had taken my mare to Chariton, Iowa, and there sold her for $25; took the money and got on a big spree; then went some miles further, stole a horse and took it to Nebraska, stayed there thirty days, stole another horse and brought it to Missouri and sold that one; he said he was then in jail for stealing another horse here. To the introduction of all the

24—78

evidence relating to the other alleged thefts defendant objected without avail.

John T. Williams, for the State: Saw defendant at the jail in Livingston county; he told me he had got Evans' horse and sold her to a man in Chariton, Iowa.

J. D. Evans, for the State: Saw defendant in jail; asked him what defense he had; he said he had none; he hoped Evans would not be hard on him, and he would pay Evans when he got out.

David Hughes, for the State: Defendant said to me that he told Evans the truth at Richmond; that he felt bad about it, had sold the horse in Chariton, Iowa.

M. W. Butler: Evans came to me in 1879 looking for lost horse: we looked all over the city; could not hear anything of his animal, or of defendant being here at all.

N. H. Taft was express agent at Chillicothe in 1879; have examined books of American Express Company and find no account of any package received at Chillicothe for J. E. Owen; none came to my office; was also agent for Union Express Company; have not examined those books, as they were sent in; do not know what they contained and cannot tell whether defendant received package by that company or not.

Isaac Leeper: Received defendant from the penitentiary and have had him in my charge as jailor ever since; received him January 15th, 1881; he had just served a term for horse stealing when I got him.

G. W. Cranmer, for defendant: Heard E. A. Evans testify on the first trial of this case that defendant said he would walk to Chillicothe to get his clothes, and Evans said he told defendant to take the horse so as to get back sooner. Witness Evans contradicted this statement.

Defendant Owen: I told Evans I wanted to go to Chillicothe for my clothes. He said, How? I said, on foot. He said to take the horse so as to get back sooner. I came here from Jefferson City; had been there eighteen months in prison; was in jail in Richmond May 28th or

29th, 1879; was arrested at Lawson, Missouri; have never been out of confinement since. At the time I got Evans' horse I rode her to Chillicothe; spent the money he had given me to get feed for mare and books for children for whisky; went to a saloon and got drunk.

The cross-examination of defendant was as follows: What did you do with the mare after you came to Chillicothe? Ans. I hitched her to the horse-rack on the south side of the square. What did you do with her after that? Ans. I rode her off. Did you not tell Evans in Richmond jail that you stayed north of Chillicothe with an old woman that night? Objected to; objection sustained. Did you not tell Evans that you would rather see any other man than him, when he came to see you? Objected to because defendant had made no statement in relation to conversation in Richmond jail. Objection sustained. Is this all you are willing to tell this jury about this case? Objected to as improper and only asked to prejudice the jury. Objection overruled. The question being then repeated, defendant's counsel again objected to the question and to its repetition. The court overruled the objection, but said that defendant had the right to refuse to answer.

R. Phillips, in rebuttal: Was on the jury at the first trial. Evans did not state he had offered defendant a horse to ride to Chillicothe so as to get back sooner; he stated substantially the same in that trial as in this.

David Hughes corroborated Phillips' testimony. This was all the evidence.

Whereupon the court, at the request of the State, gave the following instructions:

1. If the jury believe from the evidence, facts and circumstances proven in this case, beyond a reasonable doubt, that the defendant got the mare with intent to steal her and convert her to his own use, he is guilty of grand larceny, and in determining the question of intent the jury must look to all the evidence, facts and circumstances n the case.

2. If the jury believe from all the facts and circumstances in proof, beyond any reasonable doubt, that defendant, in the month of April, 1879, at Livingston county, State of Missouri, borrowed of E. A. Evans, the mare mentioned in the indictment, and that said mare was the property of said Evans ; that defendant never returned said mare, but converted her to his own use, and that at the time defendant so borrowed said mare he did so with the intent to steal her or permanently convert her to his own use, without the consent of her owner, they should find him guilty, and assess his punishment at not less than two nor more than seven years in the penitentiary.

3. The jury are the sole judges of the credibility of the witnesses and of the weight to be given to their evidence, and the jury are not bound to give to the testimony of any witness any other or greater weight than from all the circumstances in proof they may believe it entitled to.

4. Unless the jury believe from the evidence, beyond a reasonable doubt, that the defendant took, stole and carried away the mare mentioned in the indictment as charged therein, within three years next before the 28th day of January, 1882, they will find him not guilty, unless they further find that for some portion of that time he was absent from the State or was a fugitive from justice for the commission of the offense charged; in which case they will exclude the time defendant was so absent from the State or was a fugitive from justice for the said three years ; but unless they be satisfied from the evidence that three full years have not elapsed between the commission of the offense and the 28th day of January, 1882, during which three years the defendant was in this State and not a fugitive from justice, they will find not guilty.

5. If the jury believe from all the facts and circumstances in proof, beyond a reasonable doubt, that the defendant got the mare described in the indictment with the intent to steal her, and did convert her to his own use, he is guilty of grand larceny, and in determining the question of intent

the jury must look to all the facts and circumstances in proof.

6. Evidence consists as well of facts and circumstances as of direct proof, and proof may be as well made by facts and circumstances as by direct evidence.

7. Under the law drunkenness is no excuse or justification for crime.

8. A reasonable doubt to authorize an acquittal, should be a substantial doubt, and not a mere possibility of defendant's innocence of the crime with which he is charged.

9. By the statute of this State the defendant is a competent witness in his own behalf, but the fact that he is a witness testifying in his own behalf may be considered by the jury in determining the credibility of his testimony.

The court refused the following instructions prayed by the defendant:

5. The record of this cause shows that the defendant has been acquitted of the same acts and facts as charged in this indictment, and the jury must acquit the defendant.

6. The State has elected in this case to avoid the statute of limitations by declaring therein that the defendant was a fugitive from justice and a non-resident of this State, and are bound thereby, and unless the State has proven to the satisfaction of the jury, beyond a reasonable doubt, that defendant was a non-resident of this State or a fugitive from justice within three years before the 1st day of June, 1882, they will find defendant not guilty, and in making up their verdict they will count against the State all the time the defendant has been in custody.

7. The records read in evidence show that the defendant has been acquitted of embezzlement of the mare in controversy, and the jury must find the defendant not guilty if they believe from the evidence that the same acts and facts were introduced in evidence on said trial as in this.

8. If the jury find from the evidence that the defendant was in the State, in charge of the officers of the State

for three years next before the 1st day of June, 1882, they will acquit him.

9.   If the jury find from the evidence that the defendant was tried at the May term of the circuit court for the year 1882 on a charge of embezzlement of the mare in controversy in this case, and that the same facts were in issue upon the same evidence, they will acquit him.

The court gave the following instructions at the instance of defendant:

1.   The jury cannot find the defendant guilty of embezzlement in this case; he has been acquitted of the same; and if the jury believe from the facts and circumstances in evidence that the defendant conceived the intent of stealing Evans' mare after he got possession of her from Evans, they will find him not guilty.

2.   If the jury have any reasonable doubt as to whether the defendant conceived the intent to take the mare before or at the time he got possession of it, they will find him not guilty.

3.   If the jury entertain a reasonable doubt as to whether the defendant first conceived the intent to steal the mare in controversy, after he got possession of it, they will find him not guilty.

*Broaddus & Wait* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

I.

Sherwood, J.—The defendant was indicted in the Livingston circuit court. The indictment contained two counts, the first for larceny, in stealing a mare; the second for feloniously embezzling the same. Upon trial had, the defendant was found guilty on the first count, and not guilty as to the second, and judgment of discharge entered accordingly. For a fatal defect in the first count, the judgment was arrested, and upon another indictment being

found for larceny alone, the defendant interposed his plea of *autrefois acquit.* The trial court very properly held that this plea could not prevail, the facts in the case, spread upon the record, not warranting or sustaining the plea in bar.

The statute provides that a person may be indicted for embezzlement and convicted of larceny, or *vice versa;* and in either case he is punished according to the fact as found by the verdict, whether the indictment charge embezzlement, or whether it charge larceny. R. S. 1879, § 1652. And the section cited further provides that "no person so tried for embezzlement or larceny as aforesaid, shall be liable to be afterward prosecuted for larceny or embezzlement upon the same facts." Had the indictment in this case contained but one count for either larceny or embezzlement, and had there been simply a verdict of acquittal, doubtless under the very terms of the statute no further prosecution could have been maintained for either of such offenses based "upon the same facts." But had the indictment contained but one count, and that for embezzlement, and had a trial been had on such count, and the defendant found guilty of larceny, and either expressly or else tacitly, not guilty of embezzlement; no one would question but that if the indictment were held bad on motion in arrest, the defendant could be indicted and tried on an indictment charging larceny alone. And the *status* of the case is not altered in this regard, because the pleader has seen fit to make his charge *bifurcate,* instead of making it in but one count, as allowed by the statute.

The verdict in this case on the former indictment must be taken as a whole, and not in separate parts. It clearly convicts the defendant of larceny, and acquits him of embezzlement, and when a plea of *autrefois acquit* is pleaded, based on such a verdict, it requires but an inspection of it to see that defendant did not go acquit of the larceny. *State v. Bowen,* 16 Kas. 475 ; 1 Bishop Crim. Prac., § 1005 a.

## II.

Although the entry announcing the fact of the *nolle prosequi* as to a former indictment, is somewhat obscure, yet we think it sufficiently plain what indictment was intended to be quashed; and the subsequent action of the court upon the indictment last found, shows what construction that court put upon its own entry of record. We will not intend, except upon the very clearest and most satisfactory record evidence of the fact, that a court would commit or sanction such an egregious blunder as to put a defendant upon his trial with no living indictment whereon to try him.

## III.

The last indictment found was a valid and sufficient indictment, and charged that the larcenous act was feloniously done. There is no substantial objection to it.

## IV.

No discussion is needed respecting the causes alleged in the last indictment, as to the absence of the defendant from the State, and as to his being a fugitive from justice, because the statute of limitations does not run where, as here, there were successive indictments pending against the defendant for the offense for which he was tried, and here the first indictment was found at the January term, 1880. R. S. 1879, § 1707; *State v. Duclos*, 35 Mo. 237; *State ex rel. v. Primm*, 61 Mo. 166; Bishop Stat. Crim., § 262.

## V.

The instructions on both sides, taken as a whole, correctly declare the law on the subject of larceny, as applicable to the facts in evidence, and no valid objection can be urged against them. It may not be amiss, however, to say that nine instructions were given on behalf of the State, and three on the part of the defendant, making twelve in all, when the whole law of the case could have been cov-

ered by one or at most by two well drawn and concise instructions.

## VI.

We have no fault to find with the lower court in permitting the prosecuting attorney, after the defendant had testified in chief, to ask him, after cross-examining him to some extent: "Is this all you are willing to tell the jury about this case?" Such words were only equivalent to asking him: "Have you anything more to tell the jury?" The defendant volunteered to testify in his own behalf, and had thus testified, and was, therefore, amenable to the usual rules respecting other witnesses, and it was the privilege of the prosecuting attorney by all proper questions and methods to endeavor to elicit the truth.

## VII.

Granting that there was error in permitting Evans, the owner of the mare, to relate to the jury the confessions of the defendant as to other similar crimes besides the one for which he was on trial, it is impossible to see how the defendant was in the slightest degree prejudiced thereby; because when on the witness stand he virtually admitted his guilt, admitted that he rode the mare off from Chillicothe where he had been permitted to go out of the kindness of Evans; and he did not pretend that he ever returned the mare, and there was abundant evidence that he had not, and besides, his own confessions to several other persons than Evans, show his guilt in the clearest possible light. In such circumstances it would be out of the question to reverse the judgment. *State v. Patterson*, 73 Mo. 695; *Rex v. Ball*, Russ. & Ry. 132: *State v. Emery*, 76 Mo. 348; *State v. Jennings*, 18 Mo. 435.

## VIII.

The remarks of the circuit attorney, if improper, are disposed of by the observations made in the case of the *State v. Zumbunson*, decided at the last term, and by the

case of the *State v. Jones, ante*, p. 278, and the *State v. Dickson*, decided at the present term.   Therefore judgment affirmed.   NORTON and RAY, JJ., concur; HOUGH, C. J., and HENRY, J., dissent.

HENRY, J., dissents on the ground that the opinion is in conflict with the *State v. Thomas, ante*, p. 327; *State v. Reavis*, 71 Mo. 419; *State v. Harrold*, 38 Mo. 496, and numerous other cases decided by this court, and not supported by the cases cited.

HOUGH, C. J., DISSENTING.—I am unable to find anything in this record which warrants the statement that the defendant virtually admitted his guilt at the trial.   He was charged generally with larceny, and for the reasons given in the opinion of the majority could not be convicted of embezzlement.   The indictment was drawn under section 1307, and not under section 1322.   Edward A. Evans, the owner of the mare charged to have been stolen, testified that he loaned the mare in question to the defendant, at his request. The defendant testified that Evans tendered the use of the mare to him.   The circuit court charged the jury in substance that unless they believed from the testimony that the defendant borrowed the mare with the intent to steal her or to permanently convert her to his own use, they would find him not guilty; and that if they had a reasonable doubt as to whether the defendant conceived the intent to steal the mare before or at the time he got possession of her, they would find him not guilty.   It was admitted by the defendant, at the trial, that he rode the horse off, and he did not pretend that he had ever returned her, but neither the fact that he rode the horse off, nor the fact that he did not return her, nor both combined, constituted larceny under the instructions given by the trial court, and approved by this court in the opinion of the majority.   The intent to steal the mare when he borrowed her, or accepted the loan of her, as the fact may be, was necessary to constitute the failure to return the mare, larceny under the indictment

in this case; and this intent was not admitted by the defendant at the trial, nor was it confessed by him to any one——certainly not directly; and I think not even by implication. The evidence of other similar offenses, introduced in violation of all law, doubtless settled that question with the jury.

In a note to section 218, 1 Greenleaf's Evidence, (13 Ed.) on the subject of confessions, it is said: "The evidence must be confined to his confessions in regard to the particular offense, of which he is indicted. If it relates to another and distinct crime it is inadmissible." *Reg. v. Butler*, 2 Car. & Ker. 221. *Vide* also, *State v. Goetz*, 34 Mo. 85; *State v. Harrold*, 38 Mo. 496; *State v. Daubert*, 42 Mo. 242; *State v. Reavis*, 71 Mo. 419; *State v. Greenwade*, 72 Mo. 298; *State v. Martin*, 74 Mo. 547; *State v. Underwood*, 75 Mo. 230; *State v. Turner*, 76 Mo. 351. The decision in *State v. Underwood, supra*, is correct, for the reason that in that case it was impossible to separate that portion of the conversation of the prisoner relating to the offense with which he was charged, from that portion of the conversation relating to another offense.

The truth of all extrajudicial confessions is a matter for the jury, and not for the court. When incompetent and irrelevant testimony, damaging to the defendant has been admitted, it is not for this court to usurp the province of the jury, and declare that excluding such incompetent testimony, the other evidence shows the defendant to be guilty. The case of *Reg. v. Ball*, Russ. & Ry., cited in the opinion of the majority, cannot be accepted as authority to the contrary. That decision was put expressly upon the ground that there could be no new trial in felony. Chambre, J., said: "If the case were clearly made out by proper evidence in such a way as to leave no doubt of the guilt of the prisoner in the mind of any reasonable man, they thought that as there could not be a new trial in felony, such a conviction ought not to be set aside because some other evidence had been given which ought not to have

been received; but if the case, without such improper evidence, was not so clearly made out, and the improper evidence might be supposed to have had an effect on the mind of the jury, it would be otherwise." In the contingency last stated the admission of the illegal testimony would operate as an acquittal, under the law in force in England when that decision was rendered, or the pardon of the accused recommended. A different rule prevails in this country, and the case cited is, therefore, inapplicable.

I am of opinion that the judgment of the circuit court should be reversed and the cause remanded, in order that the defendant may be convicted by a jury on legal and competent testimony, before he is punished.