State v. Middleton, 26 N. M. 353.

---

[No. 2312.   Aug. 28, 1920.]

## STATE v. MIDDLETON.

### SYLLABUS BY THE COURT.

1.  Evidence that the deceased procured a warrant and went with a party to the home of the defendant with the ostensible purpose of arresting him is admissible, as tending to characterize his attitude toward the defendant at the time of the homicide and to account for his presence there, although the warrant may have been illegal and may have furnished no protection to the officer.                          P. 358

2.  Where the legality of a warrant, under which deceased purported to act, is questioned, it is a matter of law for the court to determine; and, although the evidence of the warrant

may be admissible for some purposes, the jury should be instructed as to the purposes for which the evidence is admissible, and should be instructed that the warrant is illegal if such be the law.            P. 359

3. Where the defendant is ignorant that an attempted arrest of him is to be made, his action in killing the officer is to be viewed as in any other case, and an instruction to the effect that, as the deceased had no right to arrest by reason of the illegality of the warrant, the defendant could not be convicted of an offense greater than manslaughter, was properly refused.            P. 361

Appeal from District Court, Guadalupe County, Leahy, Judge.

John B. Middleton was convicted of murder in the first degree, and he appeals. Reversed and remanded.

E. R. WRIGHT and O. A. LARRAZOLO, both of Santa Fe, and W. T. BROTHERS, of Santa Rosa, for appellant.

O. O. ASKREN, Atty. Gen., for the State.

OPINION OF THE COURT.

PARKER, C. J. John B. Middleton was convicted in the district court of Guadalupe county of murder in the first degree for the killing of one Francisco Serna.

The prosecution offered evidence tending to show that on the day before the homicide, Jose Gallegos went before Nicanor Lopez, justice of the peace in the precinct in which appellant lived, and attempted to swear to a complaint, which, the prosecution contended, charged the appellant with the larceny of a calf from Gallegos; thereupon a paper, which the prosecution claimed to be a warrant, was issued and placed in the hands of Gallegos, with instructions from the justice of the peace to deliver the same to a certain constable; that Gallegos went to the constable, who refused to serve the warrant on the ground that he was no longer a constable of said precinct in Guadalupe county by reason of the fact that the new county of De Baca had been created, and that the county line between Guadalupe and De Baca placed him, the constable, in De Baca county; that thereupon Gallegos, at the instance of the justice of the peace, delivered the warrant to the one Moises

Barela, a private citizen who resided in said precinct; that Barela requested and attempted by word of mouth to deputize Francisco Serna and Alvaro Lopez to go with him to the home of appellant for the purpose of making the arrest; that Barela, Serna, and Lopez rode up to the Middleton house, where they dismounted; that Serna remained with the horses while Barela and Lopez went to the house to make the arrest; that when Barela arrived in front of the door of appellant, without any warning to, or altercation with, Barela, appellant shot Barela down; that at the time he was shot he had only a paper in his hand; that when Lopez saw Barela fall he ran back to the fence where the horses were; that two of the horses became frightened and ran away, and while Serna was standing by the fence he was shot through the arm by appellant; that Serna got on a horse behind Lopez, and the two started away, and after having ridden some 70 yards appellant shot Serna through the body with a rifle; that Barela died instantly, at the place where he was shot, near appellant's house, and Serna was carried on the horse a mile or so away by Lopez, who then laid him on the ground, and he there died in a short time; that Lopez and Barela, at the time they went to the Middleton house, were armed with guns, and after the shooting Barela was found by the coroner near the house, with a pistol near his right hand which contained three empty cartridges.

The defense offered testimony tending to show that on the day before the homicide Gallegos, Barela, Lopez, and Serna went to the Middleton premises in search of a calf claimed by Gallegos; that after riding through the pasture they came back by the Middleton house during the absence of appellant, and told Mrs. Middleton that they had found a calf which belonged to Gallegos, and that it had been misbranded by appellant, and that they intended to return the next day and kill appellant; that this threat, prior to the time of the homicide, had been communicated to appellant, and the following day Middleton, with his two brothers, were in the house when Barela and his two companions rode up to the fence; .

that the three men dismounted, and Barela and Lopez
started toward the house, and Barela met Mrs. Middle-
ton as she went from the living room to the kintchen,
which were separated from each other, and Barela asked
her where appellant was; that she said he was in the
living room, and Barela called to Middleton, using a vile
name, and said he had come to kill him; Middleton
stepped out of the door, and Barela immediately fired
at him with his pistol; that appellant then stepped back
into the room, got his rifle, went to the door, was fired
upon again by Barela, whereupon he shot Barela; that
in the meantime Lopez had returned to the fence where
his companion, Serna, was; that Serna thereupon shot at
appellant with a rifle, and appellant fired at him twice,
whereupon Lopez and Serna both mounted one horse and
rode away.

The state proceeded, from their opening statement to
the jury to the conclusion, on the theory that Barela
was a special officer, legally appointed as such, and that
he and his two companions were attempting to legally
arrest the appellant at the time of the homicide. There
was no claim on the part of the defense that appellant
knew or even suspected that Barela and his companions
had come for the purpose of arresting him, with a legal
warrant or otherwise. On the contrary, from the record
in the case, it was contended by the defendant that the
three men had come there to murder him, and that he
acted only in self-defense. The appellant objected to
the introduction of all the testimony concerning the
making of the complaint, the issuance of the warrant,
and the introduction of the complaint on the ground that
it did not state any offense, all of which objections were
overruled by the trial court, and all of such evidence
stood before the jury for their consideration.

The complaint upon which the process was issued did
not charge an offense. The warrant was not produced in
evidence, and there was no testimony as to its contents,
and the prosecution did not establish that the warrant
was fair on its face, and it was conclusively shown that

there was no indorsement on the back of the warrant, authorizing and empowering Barela, or any other private person, to execute the same. At the conclusion of the taking of the testimony, the defense, by tendered instruction No. 3, requested the court to instruct as a matter of law that the attempted arrest was illegal; and by tendered instruction No. 7 requested the court to instruct the jury, in substance, that by reason of the illegality of the attempted arrest the defendant could be found guilty of no greater offense than manslaughter, unless there was express malice, etc.

The trial court refused these two instructions, but did give two instructions on the subject of the right to arrest without declaring as a matter of law whether the attempted arrest was legal or illegal. The trial court also gave the ordinary instructions on self-defense.

After oral argument, on first blush, we were of the opinion this cause would require a complete review of the law of homicide in the resistance of an attempted illegal arrest. However, after reviewing the record and briefs, we have concluded that it is only necessary to determine three propositions for the purposes of this opinion and a retrial of the case:

First. Was the testimony objected to by appellant concerning the purported complaint, the issuance of the warrant, and the placing of the same in the hands of Barela for execution, and his attempt to deputize Lopez and Serna, admissible in the case for any purpose?

Second. Should the court have instructed the jury as a matter of law that Barela, Serna, and Lopez had no right to attempt to execute any process, and that the attempted arrest was illegal, as requested by appellant's tendered instruction No. 3?

Third. Should appellant's requested instruction No. 7 have been given, wherein appellant requested the court to instruct the jury as a matter of law that appellant in any event could be convicted of no higher degree of

homicide than manslaughter by reason of the attempted illegal arrest, unless there was express malice shown?

[1] The first proposition we answer in the affirmative. Such evidence was admissible, so that the court might ascertain, as a matter of law, whether the attempted arrest was legal or illegal. It was also admissible for the purpose of tending to show the state of mind of Barela, Serna, and Lopez at the time of the homicide, and such testimony showed the purpose of their going to the scene of the homicide, and it characterized their acts at the time of the difficulty, and threw light upon the proposition as to who was the aggressor. All of this the jury should have known, so they might weigh and consider whether the deceased and his companions went to the Middleton home on a peaceful mission; that is to say, whether they went there honestly believing that they had the right to make the arrest, or whether they went there, as contended by the defense, for the purpose of murdering the appellant, and had procured the purported complaint and warrant merely as a shield to protect themselves in carrying out such unlawful design.

Michie on Homicide, vol. 1, p. 718, lays down the general rule as follows:

"Where an act or transaction is given in evidence for the purpose of showing the motive or state of mind which actuated the parties to it, it is proper, at least as a general rule, to permit the parties to be affected to show the immediate circumstances which lead to the transaction; otherwise the real object of the inquiry may not be ascertained."

On this subject, Wharton on Criminal Evidence, vol. 2, p. 1733, sets out many instances where such evidence is admissible, and on page 1737, a part of the text is as follows:

"And on a trial for assault with intent to kill, where it appears that the assault was made in an effort to escape from custody, it is error to reject evidence showing that the party accused had no warrant or authority to make such arrest."

And on page 1723:

"Where it became material to explain the presence of the

deceased at the place of homicide, as to whether or not he was there on a lawful mission, an officer may testify that he had a warrant for accused, and requested deceased to be at the place of the homicide and to notify the officers if he discovered accused."

And on page 1724:

"It is relevant to show the actions, movements, and declarations of the deceased on the day of the homicide, which explained his presence at the place where he was killed, notwithstanding the general rule that such acts, movements and declarations were not admissible against accused where he was not present and had no notice of them."

If the jury in their deliberations should have found that Barela, Lopez, and Serna went to the Middleton home, not for an honest purpose, to wit, to effect the arrest of Middleton, but for the purpose of carrying out a threat to kill him, then and in that event the jury might well have believed that Barela and his companions. were the aggressors in the fatal difficulty, and that Middleton would have had the right to defend himself. If, on the other hand, after considering all of the testimony on this subject, the jury believed that Barela and his associates went to Middleton's home, not for the purpose, as is contended by the defense, of murdering him, but to execute the law as they believed they had a right to do, then and in that event, in determining who the aggressor was, the jury might well have believed, if they adopted the state's theory, that Middleton was the aggressor, and did not give Barela sufficient time to announce his mission.

The question is one for the determination of the trial court in the concrete case, and it is in the rulings upon admission or rejection of testimony of such collateral circumstances that courts most frequently err; but in this case we hold that this line of testimony was relevant for the purposes above indicated, and therefore the court did not err in overruling appellant's objection to the same.

[2] On the second proposition we have determined that appellant's tendered instruction No. 3, or some

similar instruction on the subject, should have been given by the trial court. With the mass of testimony on the subject of the attempted arrest before the jury for their deliberation, undoubtedly it logically follows that either the court or jury must adopt a rule of law to which such facts should be applied. Where the legality of a warrant is questioned, it is a matter of law for the court to determine, and whether the person attempting to execute process has authority under the law so to do is a matter of law for the court to determine. Whether the person attempting to execute process acted in a proper manner, and as to whether he used more force than was necessary to accomplish his purpose, is, of course, a question of fact for the jury to determine. Creighton v. Com., 83 Ky. 142, 4 Am. St. Rep. 143; Hendrickson v. Com., 81 S. W. 266, 26 Ky. Law Rep. 224; Forman v. Com., 13 Ky. Op. 1021; Cortez v. State (Tex. Cr. App.) 66 S. W. 453; Commonwealth v. West, 113 S. W. 76.

No doubt the jury discussed and considered whether the attempted arrest was legal or illegal, and whether or not Barela and his associates acted by authority of the law. It is a prevalent idea in all civilized countries that the majesty of the law must be upheld, and that an officer, either general or special, when attempting properly to carry out the mandates of the law, has a cloak of protection thrown around him, and that it is the duty of a person, upon whom an attempt to arrest is properly made, to submit to the majesty of the law, and that such person has no right to resist.

The record clearly discloses that Barela, Lopez, and Serna had no authority under the law to attempt to arrest Middleton. Undoubtedly, if the jury determined that Barela, Lopez, and Serna were acting with authority of law, they might well have concluded that Middleton had no right to resist any appearances of force to arrest him. Under this misapprehension of the law, it is quite possible that the jury started with a false premise in determining who the aggressor was. The jury might

have believed the testimony of the defense to the effect that Barela made the first overt act by stepping to the door with a drawn pistol in his hand and calling out Middleton, and they might further have believed that Middleton was not the aggressor in the first instance by any overt act on his part, and still have convicted him on the theory that Barela and his companions were clothed with the authority of the law, and had the right to be the aggressors in the first instance, and to use force to accomplish their purpose, and Middleton had no right to resist or repel force with force.

If the jury had been properly instructed that Barela and his companions had no authority under the law to attempt to arrest Middleton, and that when they went to the Middleton home they acted merely as private citizens, then the jury would have been in a position to properly pass upon the real issue in the case, to wit, who was the aggressor by the first hostile overt act, Middleton or Barela and his companions?

The jury should have been instructed that Barela, Serna, and Lopez had no authority to attempt to arrest Middleton, so there would have been nothing in this respect to confuse them; and, believing there was room for the jury to start with a false premise in determining who the aggressor was by not being so instructed, the case must be reversed.

[3] The third proposition is the most serious one to decide, because of the mass of conflicting authorities on the subject of homicide committed in resistance to attempted unlawful arrest with process.

No doubt the numerous conflicting authorities have been occasioned, because, in determining the criminality or the degree of criminality of the killing in resistance to such unlawful attempt, so many things should be considered. For instance: The authority of a person acting as an officer to act as such; the validity of the warrant; the manner in which the officer or person acting as such attempted to execute the process; the degree

and extent of force used by him; the knowledge of the person resisting, as to the authority of the person acting as an officer to act as such; the knowledge of the person resisting as to the validity of the process; the conduct of the person resisting at the inception of the attempted illegal arrest; the degree and extent of force used by the slayer in resistance; whether the killing resulted from heat of passion induced by an attempted illegal arrest, or whether some other motive impelled the slayer; whether the conduct of the officer or person acting as such caused the slayer at the time to honestly believe as a reasonable man he was in danger of losing his life or receiving great bodily harm.

A consideration of any one or all of the elements above enumerated, and possibly others, might become material in a given case. It would require nothing short of a thesis to discuss the law appertaining to each element, and we shall attempt to discuss only such matters as are decisive of proposition 3.

Many courts, apparently without considering all the elements applicable to the given case, have used, in substance, the following language:

"The law estimates human liberty so highly that any attempt to arrest without authority of law is a great provocation, and adequate cause for heat of passion which will render the mind incapable of cool reflection, and if, under such circumstances, one kills an officer or other person attempting to make an illegal arrest on his person, unless there is malice, such killing cannot be more than manslaughter."

Defendant's requested instruction No. 7 embodies this principle; and, while such principle, as an abstract proposition of law, might be correct in so far as it goes, it is not accurate, because not complete, and is not, in all respects, applicable to this case, because such statement disregards some of the elements which should have been considered in determining the guilt or innocence, or the degree of guilt of appellant.

The mere fact that Barela, Lopez, and Serna were not clothed with authority to act as officers when they went

to arrest Middleton, technically constituted them tres-
passers; but this state of facts alone would not forfeit
their lives, and would not authorize Middleton to use
force with a deadly weapon until there was some overt
act on the part of Barelà, Lopez, or Serna indicative of
an intent to then and there kill him or do him great
bodily harm.  The person sought to be arrested is not
justified in resorting to a deadly weapon if he had no
reasonable ground to apprehend a greater wrong than
a mere unlawful arrest.  Roberson v. State, 43 Fla. 156,
29 South. 535, 52 L. R. A. 751; Noles v. State, 26 Ala.
31, 62 Am. Rep. 711; State v. Underwood, 75 Mo. 230;
Galvin v. State, 6 Cold. (Tenn.) 283; People v. Morales,
132 Cal. 550, 77 Pac. 470.

While there are cases which hold that a person may
lawfully kill rather than submit to an unlawful arrest,
such cases are not in harmony with the great weight of
authority on the subject, and, as stated in State v.
Symes, 20 Wash. 484, 55 Pac. 636, "reason and good
sense forbid the use of a deadly weapon, unless in de-
fense of life, or to avoid great bodily harm." Roberts
v. State, 14 Mo. 138, 55 Am. Dec. 97; Rafferty v. People,
69 Ill. 111, 18 Am. Rep. 601; 2 Bish. Cr. Law, § 652;
Briggs v. Commonwealth, 82 Va. 564; Roberson v. State,
43 Fla. 156, 29 South. 535, 52 L. R. A. 751.

Therefore the real test to determine whether the slayer
is guilty of some degree of homicide is whether, at the
time of the homicide, he honestly believed, as a reason-
able man, he.was in danger of losing his life or receiving
great bodily harm at the hands of the deceased, and
whether the appearances were such as to cause a reason-
able man so to believe, and whether he, so believing,
killed for the purpose of defending himself.

If Middleton had not the right of self-defense under
the rules heretofore announced, did the fact of the at-
tempted unlawful arrest, unknown to him at the time,
reduce what otherwise might be murder to manslaugh-
ter?  Practically all the cases on this subject, which have
declared that an attempted illegal arrest will reduce to

manslaughter a killing which might otherwise have been murder, do so upon the theory that an illegal attempt to arrest a man is such a provocation as will cause heat of passion. In this case, however, there is not a scintilla of evidence, either by the prosecution or for the defense, that the defendant knew at the time of the homicide there was an attempt to illegally arrest him, and there was no discussion or dispute whatever between the contending parties concerning the right to arrest. Neither were there any acts upon the part of the deceased or his companions which would be sufficient to apprise defendant of that fact.

Can it then be said, as claimed by appellant in his tendered instruction No. 7, that the mere intention upon the part of the deceased and his companions to make an unlawful arrest which was unknown to the defendant at the time, would provoke the defendant and cause heat of passion? Before one could be provoked by an adequate cause certainly the facts constituting the provocation must have been known by the person at the time. It would be absurd to say that subsequent developments which revealed facts concerning an illegal arrest would be sufficient to arouse passion, when such facts were unknown to the person at the time of slaying. A motive cannot operate to influence until the facts which create the motive exist. The facts upon which a motive is based cannot operate upon the mind until they are known by the party against whom the motive is assigned. We therefore hold that unless the defendant at the time of the homicide, knew of the attempted illegal arrest, such attempt could not be such a provocation as would cause heat of passion, and thereby reduce the homicide to manslaughter, and said tendered instruction No. 7, therefore, should not have been given, because not applicable to the facts in this case. This view is supported by the well-reasoned opinion rendered by Judge Brooks in Earles v. State, 52 Tex. Cr. R. 140, 106 S. W. 139.

However, from the record there might be an element of manslaughter on another theory; that is to say, if

Hubert v. American Surety Co., 26 N. M. 365.

Middleton had the right.in the first instance to defend against the acts of Barela and Serna, and from the state's standpoint shot Serna the second time through the body after all real or apparent danger to him had ceased, and before his mind had sufficient time to cool, he might be found guilty of manslaughter. In the event his mind had sufficient time to cool, and he killed with malice and in retaliation or revenge, he might be convicted of murder.

It follows that there is error in the judgment, and that it should be reversed, and the cause remanded for a new trial; and it is so ordered.

ROBERTS and RAYNOLDS, JJ., concur.