## JAMES ANDERSON, Respondent, v. DR. J. T. WHITE, Appellant.

Springfield Court of Appeals, December 5, 1921.

1. **TRIAL: Evidence Viewed in Light Most Favorable to Plaintiff on Demurrer.** On demurrer to the evidence, the evidence is to be viewed in the light most favorable to the plaintiff.

2. **PHYSICIANS AND SURGEONS: Negligence of Physician in Attempting to Locate and Remove Piece of Steel in Plaintiff's Eye, Held for Jury.** In action against physician for negligence in treatment of plaintiff's eye, injured by steel sliver, question of whether defendant negligently punctured plaintiff's eyeball while attempting into locate and remove the piece of steel by means of a certain probe, *held* for the jury.

3. **APPEAL AND ERROR: Verdict not Disturbed Unless There is no Substantial Evidence to Support it.** An appellate court cannot interfere with verdict unless there is not substantial evidence to support it.

4. **TRIAL: Instruction as to Weight of Evidence of Absent Witnesses by Deposition, Held Improper as a Comment on Evidence.** Where absent witnesses have given their evidence by deposition, or before the court at a former trial, and their evidence is not made compulsory in that manner in order to avoid a continuance under Revised Statutes 1919, section 1390, an instruction that such evidence is to be given the same weight and credit as if the witnesses were personally present is improper and prejudicial; such instruction being a comment on the evidence.

Appeal from the Circuit Court of Webster County.—*Hon. C. H. Skinker*, Judge.

REVERSED AND REMANDED.

*W. N. Evans* for appellant.

The court erred in refusing to instruct the jury at the close of all the evidence to return a verdict for the defendant, on motion of the defendant, for the reason that the evidence was not sufficient to sustain a verdict on the pleadings and that under the uncontradicted evidence the defendant was not guilty of negligence as alleged in plaintiff's petition: Schmidt v. Oil Co., 221 S. W. 389; Nevinger v. Haun, 196 S. W. 39; Spain v. Burch, 169 Mo. App. 94; Coffey v. Howard, 192 Mo. App. 455; Kazee v. City, 217 S. W. 339.

*Luna & Boone* and *Moore, Barnett & Moore* for respondent.

(1)   The so-called abstract of appellant shows no record proper whatever, and is not sufficient for this court to review the matters in dispute.   Case v. Carland, 264 Mo. 463; Matthews v. Jones, 199 S. W. 578.   (2)   The trial court was right in submitting this case to a jury and would have committed error of the rankest type in giving the instruction asked by defendant in the nature of a demurrer.   Grainger v. Still, 187 Mo. 197, 1. c. 210; Coffey v. Tiffany, et al., 182 S. W. 495.   (3)   The instructions under the facts presented were proper. Wheeler v. Boles, 163 Mo. 398; Young v. Wolff, 190 Mo. App. 94, and authorities above cited.   (4)   Instruction number 6, which appellant's counsel take as established error on the part of the trial court merely declares the law and is not a comment on the evidence. State v. Underwood, 75 Mo. 230.

BRADLEY, J.—Plaintiff sued to recover damages for alleged negligence on the part of defendant, a physician, in treating plaintiff's eye, injured by a sliver from an axe.   Plaintiff recovered in the trial court, and defendant's motion for a new trial being overruled he appealed.

It is alleged that plaintiff engaged defendant to examine and treat his eye, which had been injured by being accidentally struck on the ball by a piece of steel,

and that defendant negligently, carelessly and unskillfully conducted himself in and about the examination and treatment of said eye by attempting to locate and remove said piece of steel by means of a certain probe; that through negligence, carelessness and unskillfulness defendant punctured plaintiff's eyeball causing the vitreous humor to escape and causing inflammation to set up, resulting in the total loss and blindness of said eye. The answer is a general denial.

Defendant urges two propositions: First, that his instruction in the nature of a demurrer should have been given, and second, that error was committed in giving plaintiff's instruction 6.

Plaintiff and another were cutting wood, the cut pinched, and they put a double bitted axe in the gash, and plaintiff's helper struck this axe with the dull bit of another axe, and a sliver flew off and struck plaintiff in the lower part of the left eye next to the nose, "across the eyeball rather and cut a little gash." Plaintiff says that it hurt a little then, that he stopped work, went home and had his wife look in his eye. Plaintiff decided to go to Gainsville where defendant resided, but learned at a nearby store that defendant was in that neighborhood, and waited there. Soon defendant came by and examined plaintiff's eye, but could find nothing. Defendant told plaintiff to go to town that afternoon, that there might be something in the eye. Plaintiff went as directed, and defendant again examined the eye, but again failed to find anything. Defendant gave plaintiff some medicine to put in the eye and told him to go home and have his wife wash the eye with salt water. Plaintiff says that he went home and worked around the place some, and that his eye did not hurt him any more until about four o'clock next morning, that then it was paining him pretty severely. Plaintiff went again on that day to defendant. Plaintiff says that he could see out of the injured eye, but when he looked down it appeared smokey. Of this second visit and the treatment given, plaintiff testified: "I went to the

doctor, told him I wanted him to look at my eye again, that I thought there might be something in it. He looked into my eye and then he probed into my eye, put something in there at that time. He had some little instrument, some kind of tweezers, sharp pointed instruments, something like that (pointing to a pair of tweezers laying on table). He took them and run across my eyeball that way two or three times and about the last time he went across there it cut through. I felt that instrument go through and it felt mighty bad. It make me sick and I began throwing up and I shoved him back. At that minute when I felt that go through was the last time I seen out of my eye and he said, you will have to go to West Plains and have the doctor look at your eye. My brothers fixed a way and took me over to West Plains. My eye was hurting me mightly bad. When we got to the river my eye was badly swollen. When he was probing the eye the water ran out of the eye and ran down my cheek, dripped off, and the doctor says, there is the eye water.''

Lee Crawford, a witness for plaintiff, testified that about the second day after defendant treated plaintiff's eye he heard defendant say that he ''probed in behind his eyeball and the eye water began running out and that he saw it was time to quit and he sent him to a hospital. Said he gave him some medicine to ease him; he said he wouldn't be surprised if he lost his eye.'' Bert Miller testified that about a week after defendant treated plaintiff's eye he heard defendant say: ''When I probed into Mr. Anderson's eye, the eye water ran out so bad I had to quit and I advised him to go to West Plains.'' Henry Hays testified that on the third day after the treatment he had a conversation about plaintiff's eye with defendant in which conversation defendant said that he ''probed into his eye and the eye water ran out on his cheek and ran on the floor, and he had a pencil in his hand and he indicated, said he probed into his eye about like that.''

Plaintiff offered some expert evidence tending to show that it was negligent and improper to probe in his eye in the manner indicated by his evidence. Also plaintiff offered in evidence a part of the evidence of defendant at a former trial where defendant was asked and answered as follows: "Q. Doctor, you say it wouldn't do at all to put a probe in that eye? Down in the eye where the injury was; it wasn't the thing to do at all to use a probe in that eye? A. No, sir."

Defendant denied probing in plaintiff's eye. He says that he "used forceps or tweezers, just opening the lips of the wound and made an examination as carefully as I could, and found that I was not in a position to do so, so I sent him to a specialist." He also offered evidence tending to show that plaintiff's eye was badly swollen when he examined it, and that the sight was already then gone. Defendant said that he had no probe, and made no statements about probing the eye.

For the purposes of the demurrer the evidence is to be viewed in the light most favorable to plaintiff. When the evidence is considered in the light of this well known rule it appears that defendant's contention in this respect is not well founded. It is only when there is no substantial evidence to support the verdict that an appellate court can interfere. Plaintiff's cause is not so abundantly established as his learned counsel contend, yet when measured by a demurrer he was entitled to go to the jury.

The next assignment is of more serious consequence. Plaintiff's instruction 6 is as follows: "The court instructs the jury that the evidence of Doctor Klinger, Irvin Graves, Roma Sims, Tom Foster, and certain other witnesses used by the plaintiff and defendant appears by deposition and by transcript of the stenographer who took the evidence in the former trial in this case, and it therefore becomes your duty to give such testimony such weight and credit as you would if said parties were personally present and testifying before you."

To support this instruction plaintiff relies upon State v. Underwood, 75 Mo. 230. It appears in that case that the defendant was charged with murder, that he filed an application for a continuance. Under the law as it then existed the prosecuting attorney could defeat a continuance by consenting that the facts set out in the application might be read in evidence, etc., section 1886, Revised Statutes 1879. In the Underwood case the prosecuting attorney met the application for a continuance by proceeding according to the provisions of said section 1886. The court at the instance of the State gave this instruction: "The statements read in evidence as the testimony of C. R. Turner and John Doe, whose real name is unknown, are to be taken and received by the jury as the testimony of such persons were they present; and the jury are the sole judges of their credibility, and of the weight to be given to their testimony." The defendant requested and the court refused this instruction: "The statement read in evidence upon defendant's application for continuance, of the facts which he expected to be able to prove by the absent witnesses, are to be taken and received by the jury as the testimony of such witnesses, and are entitled to the same weight as if such absent witnesses had been sworn and given their evidence on the trial." For giving the instruction requested by the State, and refusing the one requested by defendant, the cause was reversed and remanded. Of the given instruction the court said: "On retiring to consider of their verdict the jury could not fail to be impressed with the line of demarkation thus drawn between the testimony of the witnesses present and that of those absent, or what is tantamount thereto, its lawful equivalent and legal substitute. Such distinctions, violative alike of the statute and of the reasons upon which it is founded, cannot receive our sanction." The court expresses the opinion that the instruction requested by defendant and refused correctly embodied what the Legislature intended to be the effect of the statute, section

1886, supra. Said section 1886 was declared unconstitutional and void in State v. Berkely, 92 Mo. 41, 4 S. W. 41. Under the law as it is now it would be unlikely that a condition would arise in a criminal case calling for such instructions.

In Dry Goods Co. v. McLaughlin, Dyer & Co., 78 Mo. App. 578, there was an application by plaintiff for a continuance. The interpleader avoided a continuance by admitting that the absent witness would, if present, testify, etc., complying with what is now section 1390, Revised Statutes 1919. This instruction was given: "The court instructs the jury that interpleaders admit that Dyer, if present, would testify as set out in his affidavit and read in evidence, but do not admit that such testimony is true." This instruction was held to be erroneous. In commenting on this instruction the court said: "The object of the statute is to give the evidence of the absent witness as set out in the application for a continuance, the same weight, the same credit, and the same probative force as his deposition would have, had it been taken in the regular statutory method, and it should no more be made a special subject of animadversion by the court orally or by way of instruction, than the evidence of any other unimpeached witness."

In Freeman v. Ry. Co., 95 Mo. App. 94, 68 S. W. 1057, the following instruction was condemned: "The court instructs the jury that the plaintiff admits that one F. R. Kautz and George Byerne, if present on the witness stand, would swear to certain matter set out in an affidavit made in support of an application for continuance filed in the case by the defendant. You are further instructed that by such admission on the part of the plaintiff he does not admit the truth of such statements, but he may disprove the matters disclosed in said statements or prove any contradictory statements made by such absent witnesses in relation to the matters in issue and on trial. It is for you to say what weight you will attach to any and all testimony introduced in the trial of this cause." Commenting on this instruction the

court said: ''The vice of the said instruction is plain— It tells the jury that the plaintiff may disprove the matters disclosed in said statements, or prove any contradictory statements made by such absent witnesses in relation to the matters in issue and on trial. The court thus, in effect, told the jury that said absent witnesses had made contradictory statements.''

In Elsner v. Supreme Lodge, 98 Mo. 640, 11 S. W. 991, the following instruction was condemned: ''The jury are instructed that plaintiff does not admit the statements made in defendant's application for a continuance and read in evidence, to be facts established by evidence, but only admits that defendant could produce evidence as in said affidavits stated, tending to prove such facts.'' In commenting upon this instruction the court said: ''This instruction fell far short of telling the jury that the facts recited in the affidavit for continuance, as those the absent witnesses would prove, were to be received with like effect as their testimony. If the court instructed at all upon that point it should have carefully given as much effect to those affidavits as the statute requires (R. S. 1879, sec. 3596). The extent of the admission made to prevent a continuance is, in strictness, a matter with which the court alone should deal. The admission is made to the court. It is, at least, unnecessary (we will not say always erroneous) to refer to it in instructing the jury. But we have no doubt that the instruction numbered 2, given in the case at bar on the subject, was calculated to convey a wrong impression regarding the absent evidence of defendant, which the affidavits and the adversary's admission had undertaken to supply.''

It will be noted that the courts in passing upon instructions dealing with absent witnesses where continuance has been avoided under what is now section 1390, Revised Statutes 1919, have uniformly condemned instructions which have exceeded the latitude allowed by the statute. In Jones v. Railroad, 228 S. W. (Mo.) 780, l. c. 785, there was an application by defendant for a

continuance. The continuance was avoided by plaintiff admitting, etc., under section 1390, Revised Statutes 1919. The defendant requested and was refused this instruction: ''The court instructs the jury that the evidence of the absent witness, Clare Roach, as contained in and read to you from the affidavit in support of defendant's application for a continuance, is entitled to and should be given the same weight and credit that you would give it if said witness were personally present and testified to the same facts before you.''

The court held that this was a proper instruction and should have been given. Commenting thereon it is said: ''We confess our inability to understand upon what theory of law the trial court refused to give said instruction C. It is clearly 'within the purview of above section of the statute, and in Elsner v. Sup. L. K. & L. of Honor, 98 Mo. 640, 11 S. W. 991, was held to properly state the law. This was an important matter from defendants' viewpoint, as the conductor, Johnson, and Holt, the brakeman, were present at the trial, and testified in person. Roach was not present, *nor was his deposition taken in the case.* The defendant was entitled to have the jury informed, under section 1960, supra, that the testimony of Roach, as read, was to be considered as though he were present and testified to the facts stated in the affidavit. The refusal of said instruction cut off the legal right of defendant's counsel to argue before the jury the view they should take of Roach's testimony. Instruction C properly declared the law, and should have been given. The refusal of the court to give same constituted reversible error.'' (Italics ours).

It would appear that if plaintiff's instruction related to the evidence of witnesses whose statements were read under section 1390, Revised Statutes 1919, that it would be a proper instruction; but where the *absent witnesses* have given their evidence by deposition or before the court at a former trial, and their evidence is not made compulsory in that manner in order to avoid a continuance, we are of the opinion that such an instruc-

tion was given in the instant case was improper and prejudicial. We think that the italicised portion of the excerpt quoted, supra, from Jones v. Railroad, is significant, and indicative of what the consequences should be when such an instruction is given except under the statute where a compulsory admission has been made in order to avoid a continuance. All such instructions are a comment on the evidence, but to a limited extent such instructions have been held proper when growing out of applications for and avoidances of continuances under section 1390.

The court refused instruction A, asked by defendant, but he did not raise the point of this refusal in his motion for a new trial. But if on a retrial the evidence is the same as here, and this instruction is again requested, it should be given. The judgment, because of the erroneous instruction noted above, should be reversed and the cause remanded, and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.